# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| FERMIN COLINDRES, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-01-4319 |
| § | consolidated with H-01-4323 |
| QUIETFLEX MANUFACTURING, § | |
| *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Plaintiffs, present and former employees of defendants, Quietflex Manufacturing Co., L.P., Quietflex Holding Co., Goodman Manufacturing Co. L.P., and Goodman Holding Co., moved for class certification of this employment discrimination suit. The proposed class seeks injunctive and declaratory relief, back pay, and punitive damages.[1] In November 2004, this court held an evidentiary hearing on class certification. During the hearing, this court asked questions about pay calculations for putative class members. In March 2005, the parties submitted supplemental expert reports on the ability of the proposed class to seek back pay. On May 5, 2005, defendants' expert stated in his deposition that before writing his supplemental report, he had sent an e-mail to defense counsel addressing some of the court's questions on pay calculations. Plaintiffs seek discovery of the e-mail under Rule

---

[1] Plaintiffs allege employment discrimination and retaliation under Title VII, 42 U.S.C. §§ 2000e *et seq.* and violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

26(a)(2)(B). Defendants have moved for a protective order on the basis that the document is protected as attorney work-product and argue that plaintiffs have received all expert discovery related to the supplemental report. (Docket Entry Nos. 229, 231).

Based on the pleadings; the motion, response, and reply; the parties' submissions; and the applicable law, this court denies defendants' motion for a protective order and orders production of the e-mail. The reasons are set out below.

## I. Background

Defendants produce flexible air conditioning ducts and component products. In Quietflex's manufacturing plant in Houston, Texas, employees are assigned to work in one of six departments that execute a specific step in the production process. Plaintiffs, employees or former employees of Department 911 and Department 906, allege that defendants segregate – and for a decade or longer have segregated – their unskilled workforce. Departments 911 and 906 are virtually all Latino, while Department 910 is virtually all Vietnamese. Department 910 makes cores and jackets for the ducts. Department 911 assembles the core, jacket, and fiberglass components to create the finished product. Department 906 ships and receives the assembled products. Plaintiffs allege that defendants "systematically initially assign Latinos into Department 911" and "systematically refuse to assign Latinos into Department 910." "The segregation cannot be explained by job skill differences, because Departments 910 and 911 have the same entry requirements: no skills required." (Docket Entry No. 55, ¶ 4).

Plaintiffs allege that workers in Department 911 and 906 receive lower wages than workers in Department 910; have more physically demanding and dangerous jobs; must work more hours to meet their minimum production quotas; are provided inadequate safety equipment; are more frequently injured; and are required to perform menial tasks, such as cleaning the lunchroom and the bathroom, without compensation. (*Id.* at ¶¶ 36-53).

Plaintiffs move for certification under Rules 23(b)(2) and 23(b)(3). In addition to injunctive and declaratory relief, plaintiffs seek back pay and punitive damages for the proposed class. Plaintiffs seek to certify a class of:

> All current and former Latino employees who worked in Departments 911 and 906 at any time during October 10, 1997 to the present and who were subjected to Defendant's discriminatory policies and practices.

(Docket Entry No. 213, p. 6). Plaintiffs also seek certification of two subclasses that consist of the following:

> All current and former Latino employees who worked in Departments 911 and 906 at any time during October 10, 1997 to the present and who were subjected to Defendant's discriminatory policies and practices and who will not seek back bay for work not performed.
>
> All current and former Latino employees who were fired by the Company on or about January 10, 2000 after a group of class members complained about discriminatory conditions at the QuietFlex facility.

(*Id.,* p. 6).

Workers in Departments 910 and 911 receive piece rate wages. In response to plaintiffs' motion for class certification, defendants presented the expert opinion of Dr. David

Jones, an industrial organization psychologist. Jones submitted an initial expert report dated January 27, 2004. (Docket Entry No. 169, Ex. 5). In the report, Jones identified three reasons for differences in average pay between the two departments: job content, "going rates" in the labor market, and employee-related differences such as tenure, pay increases, and training time. (*Id.,* p. 6). Jones opined that because Department 911 experienced a high level of turnover of employees "early on the productivity curve," a gross comparison of average pay may offer misleading conclusions as to the extent of pay disparity. (*Id.,* p. 50). Plaintiffs submitted the export report of Dr. Charles Mann, a statistician. In his report, Mann opined that defendants' payroll and employment records show statistical evidence of disproportionate racial assignment and disproportionate pay rate between the two departments; Latinos were assigned to Department 911 and Department 911 workers received lower wages.

At the November 2004 evidentiary hearing, Jones testified that Mann's statistical analysis of Department 911 versus Department 910 compensation was overly simplistic. Defendants argued that because of the piece rate compensation system, the calculation of back pay will require complex and individualized inquiries because the pay varies among all the workers due to the individual employee's productivity and tenure at the company. This court asked about using the existing payroll data to determine the degree of variation of an individual employee's wages from pay period to pay period and whether productivity in Department 911 was a reliable proxy for productivity in Department 910. After the hearing, both parties submitted supplemental expert reports on the issue of whether back pay could

be calculated on a class-wide basis, given the piece rate compensation. Plaintiffs argue that the payroll data provides for mechanical calculation because it shows that variations in individual workers' wages correlate to department productivity.

On March 8, 2005, Jones submitted a supplemental report, "An Analysis of Pay Data for Employees Moving From Department 911 to Department 910 During the Period October 1997 through December 2004." (Docket Entry No. 229, Ex. 5). During his deposition, Jones testified that before he submitted his supplemental export, he had sent an e-mail to defense counsel, unsolicited, addressing the questions raised in the hearing. Jones testified:

> [D]uring the hearing I was asked a couple of questions by the court regarding whether certain analyses could be done or certain issues could be explored given the data that we already had in hand. And I indicated to the court at that time that – I believed the questions [the court] asked could be answered given the data we had available. The first thing I did after the hearing was to summarize for counsel, defendant counsel, what questions I thought had been asked of me and how I thought those analyses could be done. And then I communicated that thinking to counsel.

(Docket Entry No. 229, Ex. 1, p. 5). Plaintiffs requested production of the e-mail and defendants declined. On May 10, 2005, defendants responded that the document was protected as attorney work-product. (*Id.,* Ex. 2). On May 13, 2005, defendants filed this motion for a protective order and submitted the document for *in camera* inspection. The document is a printed e-mail dated November 30, 2004 regarding "Follow-Up to Discussions During Class Cert Hearing." (*Id.*, Ex. 3).

Defendants describe the e-mail as a communication to counsel about Jones's interpretation of questions the court asked in the November 2004 hearing and argue that the document is protected as attorney work-product because Jones was acting in a consultative role when he wrote it.  Defendants argue that Jones did not consider the e-mail in preparing his supplemental report and that its production will "reveal counsel's mental impression in their response, or non-response, to the items discussed in the memorandum." (Docket Entry No. 229, p. 4).  Plaintiffs assert that the document "constitutes part of Dr. Jones' analysis of the backpay issue in his latest report" and falls within the scope of expert discovery under Rule 26(a)(2)(B).  (Docket Entry No. 230, p. 4).

## II.   The Applicable Rules

Federal Rule of Civil Procedure 26(b)(3) states that to obtain protected trial-preparation materials, the party seeking the discovery must show "particularized need" and "undue hardship" in obtaining the information from another source.  "In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."  FED.R.CIV.P. 26(b)(3).  The work-product doctrine as codified in Rule 26(b)(3) is limited by subsection (b)(4), which provides for discovery of information obtained by or through testifying experts.  The Advisory Committee Notes state that the expert disclosure provisions "reject as ill-considered the decisions which have sought to bring expert information within the work-product doctrine." FED.R.CIV.P. 26(b)(4)(A), Advisory Committee Notes to 1970 Amendments.

In 1993, amendments to Rule 26 extended the scope of expert discovery to include a written expert report and disclosure of all information that was considered by the expert in forming his or her opinions. Rule 26(a)(2)(B) provides in relevant part:

> The [expert] report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions. . .

FED.R.CIV.P. 26(a)(2)(B). Rule 26(a)(2)(B) requires that the expert "consider" the information. The Advisory Committee Notes explain that given the disclosure obligation, "litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure." FED.R.CIV.P. 26(a)(2)(B), Advisory Committee Notes to 1993 Amendments.

### III.   Analysis

On November 30, 2004, Jones sent defense counsel the unsolicited e-mail discussing two specific questions asked by this court at the hearing. On March 8, 2005, Jones submitted his supplemental report. The report addresses one of the two questions he discussed in the e-mail. Defendants argue that Jones was acting in a consultative role when he prepared the e-mail and that Jones did not consider any information in the e-mail in preparing his expert report.

Defendants offer Jones's expert testimony on the issue of calculating back pay. The e-mail addresses Jones's understanding of the payroll data and the ability to use that data to

calculate back pay, while taking into consideration individual variations caused by the piece rate wage. The case law does not support defendants' argument that the attorney work-product protection protects the e-mail from disclosure. Under the case law, information that the expert creates or reviews related to his or her role as a testifying expert must be produced. Documents that have no relation to the expert's role as a testifying expert need not be produced, but ambiguity as to the role played by the expert in reviewing or generating documents are resolved in favor of the party seeking discovery. *B.C.F. Oil Refining Inc. v. Consolidated Edison Co. of New York, Inc.*, 171 F.R.D. 57, 62 (S.D.N.Y.1997); *JEB v. Asarco, Inc.,* 225 F.R.D. 258, 261 (N.D.Ok. 2004).

In *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc*., the court considered whether an expert-drafted memorandum sent to defense counsel after the witness had filed his expert report was subject to disclosure. 2000 WL 1843258, *6 (W.D.N.Y. Nov.2, 2000). Defendants argued that the expert was acting in a consulting capacity, not as a testifying expert. The memo did not specifically discuss the expert's report but did discuss subject matter that the expert had not fully addressed in his report. The court found that the memo contained information considered by the expert in formulating his opinions, and as such, was subject to disclosure. This case is similar, except that Jones wrote the e-mail before he submitted his supplemental expert report. In the e-mail, Jones analyzed the feasibility of two analyses that he had not performed in connection with his initial expert report, which focused on reasons for the pay disparity between Departments 910 and 911. Jones's supplemental expert report discusses one of the two questions addressed in the e-mail he sent to defense

counsel.  Courts have recognized that "information considered, but not relied upon, can be of great importance in understanding and testing the validity of an expert's opinion."  *See Trigon Ins. Co. v. United States,* 204 F.R.D. 277, 282 (E.D.Va. 2001).  Defendants did not produce any drafts of Jones's supplemental report.  The analysis contained in the e-mail is similar to a rough draft of the supplemental report.  Courts have required disclosure of "drafts of reports or memoranda experts have generated as they develop the opinions they will present at trial." *B.C.F. Oil,* 171 F.R.D. at 62 (citations omitted).  An expert's consideration of a particular issue does not become privileged or beyond the scope of expert disclosure by virtue of its omission from the expert report.

In *In re Omeprazole Litigation,* a testifying expert submitted an expert report and later deleted paragraphs from the report after discussions with defense counsel about the client's decision to drop certain defenses.  Defense counsel argued that its communications with the expert were privileged and did not contain "information" considered by the expert, who had already submitted his expert report.  The court rejected the argument and emphasized that a testifying expert is outside the scope of privilege with respect to information concerning the subject matter of his or her report.  "The opinions expressed in . . . expert reports, whether now 'deleted' or not, are clearly subject to examination. . . .  That [the expert] does not now rely on those opinions does not exclude such opinions from the scope of proper examination."  *In re Omeprazole Patent Litigation,* 2005 WL 818821 *4 (S.D.N.Y. Feb. 18, 2005).

If defense counsel had written this e-mail and sent it to Jones, it would clearly be subject to disclosure under Rule 26(a)(2)(B). *See Musselman v. Phillips*, 176 F.R.D. 194, 202 (D.Md.1997) ("[W]hen an attorney furnishes work product – either factual or containing the attorney's impressions – to [a testifying expert witness], an opposing party is entitled to discovery of such a communication.").[2] Defendants point out that the majority of the cases in which courts have found that expert disclosure obligations trump the work-product protection, involve attorney work-product provided to an expert, not from an expert. Defendants argue that these cases do not support disclosure of the e-mail because this case involves the opposite situation – an expert's opinion sent to an attorney. This distinction is an unpersuasive basis for protection of Jones's e-mail from disclosure. If anything, the distinction undercuts the asserted work-product protection, when, as here, the protection is sought for a communication involving the very subject matter on which the testifying expert is offering his opinion.

Defendants argue that "a suggestion by the expert that he could study X, but when in the end he studies Y, would tend to disclose to opposing counsel Defendants' counsels' view as to the importance or not of studying X." (Docket Entry No. 231, p. 2). This argument

---

[2] Courts have recognized that the disclosure of attorney work-product provided to an expert allows effective cross-examination and reveals the extent, if any, the influence the counsel may have had on the expert's testimony. *Weil v. Long Island Sav. Bank FSB,* 206 F.R.D. 38, 41 (E.D.N.Y. 2001) ("Without disclosure of information and opinions shared between counsel and expert, expert testimony may become another way in which counsel places his view of the case or the evidence in front of the jury.") (citations omitted); *Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 644, 647 (S.D.Ind. 2000)("[A]n attorney should not be permitted to give a testifying expert witness a detailed 'road-map'. . . without also giving the opposing party an opportunity to discover that 'map' and to cross-examine the expert about its effect on the expert's opinions in the case."); *Herman v. Marine Midland Bank,* 207 F.R.D. 26 (W.D.N.Y. 2002).

ignores the fact that X is highly relevant to the subject matter of the expert testimony. If applied to its logical end, this argument would undermine any expert disclosure obligations. In 1970, when the work-product doctrine was codified in Rule 23(b)(3), the Advisory Committee explained that the protection does not extend to information in the possession of a testifying expert. "[A] prohibition against discovery of information [including facts and opinions] held by expert witnesses produces in acute form the very evils that discovery has been created to prevent. . . . The lawyer even with the help of his own experts frequently cannot anticipate the particular approach his adversary's expert will take or the data on which he will base his judgment. . . ." FED.R.CIV.P. 26(b)(4)(A), Advisory Committee Notes to 1970 Amendments; *see also Baum v. Village of Chittenango,* 218 F.R.D. 36, 38 (N.D.N.Y. 2003)(noting that nonattorney work-product in the possession of an testifying expert must be disclosed); *Hewlett-Packard Co. v. Bausch & Lomb*, 116 F.R.D. 533, 536 (N.D.Cal.1987) ("It is quite clear that Rule 26 does not include within the definition of 'work product' documents generated or consulted by experts in connection with litigation."). Neither the Federal Rules or the case law support extending work-product protection to a document written by an expert concerning the subject matter of his testimony, when that document is not solicited by counsel but is provided to counsel.

**IV.     Conclusion**

This court denies defendants' motion for a protective order. The e-mail is to be produced to plaintiffs' counsel no later than May 27, 2005. Plaintiffs' supplemental briefing is due no later than June 6, 2005.

SIGNED on May 26, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge