**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FERMIN COLINDRES, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-01-4319 |
| | § | consolidated with H-01-4323 |
| | § | |
| QUIETFLEX  MANUFACTURING, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In this consolidated employment action, plaintiffs sue individually and on behalf of other similarly-situated present and former employees of defendants, QuietFlex Manufacturing Co., L.P., QuietFlex Holding Co., Goodman Manufacturing Co., L.P., and Goodman Holding Co.  Plaintiffs allege discrimination on the basis of race and national origin in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981; retaliation for engaging in protected activity in violation of Title VII and section 1981; and violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  Defendants have moved for partial summary judgment against Lorenzo Pastrana, one of seventy-eight individual claimants, as to his retaliation claim.  (Docket Entry No. 244).  Pastrana has responded, (Docket Entry No. 264), and defendants have replied (Docket Entry No. 284).  Based on the pleadings, the motion, response, and reply, the parties' submissions, and the applicable law, this court grants defendants' motion for partial summary judgment as to Pastrana's retaliation

claim, for the reasons set out below.

## I.    Background

As described in greater detail in this court's Memorandum and Opinion entered June 24, 2002, (Docket Entry No. 44), the Latino employees of Departments 906 and 911 staged a walkout in protest of their working conditions on January 10, 2000.  (Docket Entry No. 138 at 4).  Defendants discharged the protesting workers after they refused to leave company property as instructed during the work stoppage.  (*Id.*; Docket Entry No. 120 at 2–3).  Defendants rehired the workers approximately two weeks later.  (Docket Entry No. 138 at 4).  Plaintiffs allege that the firing on January 10, 2000 was impermissible retaliation for the work stoppage.  Defendants move for summary judgment as to Lorenzo Pastrana's retaliation claim on the ground that he did not participate in the work stoppage and was not fired in January 2000.  Instead, Pastrana was on disability leave when the walkout occurred and returned to work when his disability leave ended.  (Docket Entry No. 244, Ex. B at 60).

## II.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary

2

documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate the evidence in the record insufficiently supports an essential element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.  *Bourdeaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  "An issue is material if its resolution could affect the outcome of the action."  *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.  *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.  *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004).  The nonmovant must do more than show that there is some metaphysical doubt as to the material facts.  *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Calbillo v. Cavender Oldsmobile, Inc.*, 288

F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255.  "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

## III.   Analysis

Title VII forbids an employer from discriminating against an employee because the employee "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3.  A plaintiff may establish a *prima facie* case of retaliation under Title VII or 42 U.S.C. § 1981 by showing that (1) he participated in an activity protected by Title VII, (2) an adverse employment action occurred, and (3) a causal connection exists between the protected activity and the adverse action.  *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002); *Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 338–39 (5th Cir. 1999).  The causal link required by the third prong of the *prima facie* showing does not rise to the level of a "but for" standard.  *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (citing *Raggs*, 278 F.3d at 471).  "The plaintiff 'need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the "causal link" element of a *prima facie* case.'"  *Id*. (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir.

1996) (citation omitted)).  If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision.  *Burdine*, 450 U.S. at 254.  Once the defendant articulates such a reason, the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons."  *Id*. at 253.

In determining whether the nonmovant has created a genuine issue of material fact, courts look to rebuttal evidence of pretext "in tandem with evidence presented as part of the *prima facie* case."  *Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 733 (5th Cir. 1999).  The Supreme Court has held that a "plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000).  The trier of fact may "infer the ultimate fact of discrimination from the falsity of the employer's explanation."  *Id*. at 147; *see also Vadie v. Miss. State Univ.*, 218 F.3d 365, 374 n.23 (5th Cir. 2000) (discussing application of *Reeves*).  "[S]uch a showing by the plaintiff will [not] always be adequate to sustain a jury's finding of liability.  Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."  *Reeves*, 530 U.S. at 148.  At all times, the plaintiff retains the ultimate burden of persuasion.  *See Burdine*, 450 U.S. at 253.

Defendants argue that Pastrana cannot recover for retaliation under Title VII or 42

5

U.S.C. § 1981 because as a matter of law, there is no causal connection between any "protected activity" and any adverse employment action.  Pastrana filed a discrimination charge with the EEOC on January 12, 2000 and was among those filing the lawsuit in 2001.  He did not walk off the job in January 2000 and was not among those fired and rehired after the walkout.  (Docket Entry No. 244, Ex. B at 60).  Pastrana testified as follows:

Q.      Were you one of the workers on the walkout of January 10th, 2000?

A.      I was not working at the time.  I was on disability.

Q.      All right.  So, you were – did you actually go out while you were on disability and go down to the protest?

A.      I went with him on two or three occasions.

Q.      But you weren't fired for protesting, were you?

A.      No.

Q.      Okay.  You maintained your employment at QuietFlex throughout the time of the protest; is that correct?

A.      Yes.

Q.      And you didn't receive any type of demotion or cut in pay when you came back from disability to QuietFlex; is that correct?

A.      No.  It was just simply earning for production, and I just continued doing the same kind of work.

Q.      When did you leave on disability on the time prior [to] the work stoppage?

A.      Right now, I don't remember the exact date.  But it was more or less around '99, in November.

(*Id.* at 60–61).

Defendants contend that the only protected activities in which Pastrana has engaged are filing a discrimination charge with the EEOC on January 12, 2000 and filing this lawsuit in 2001. (Docket Entry No. 244 at 3–4, 11). Defendants argue that Pastrana did not suffer an adverse employment action after engaging in these protected activities. (*Id.* at 13). Pastrana responds that he twice requested a transfer to Department 910 and on both occasions his request was denied without explanation. (Docket Entry No. 264 at 5).

The evidence shows that Pastrana applied for an open position in Department 910 on March 19, 2004 and for another open position on February 14, 2005. The first time, he had the second-highest plantwide seniority of those applying, and the second time, the highest seniority. (Docket Entry No. 264, Ex. D).

"'Only "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensating, satisfy the "adverse employment action" element of a *prima facie* case of retaliation.'" *Mowbray v. Am. Gen. Life Cos.*, 2006 WL 83373, at *3 (5th Cir. Jan. 13, 2006) (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001)). The failure to grant an employee a requested transfer is not an adverse employment action unless the employee's position would have been made significantly better by the transfer. *McFall v. Gonzales*, 143 Fed. Appx. 604, 608 (5th Cir. Aug. 12, 2005) (unpublished decision) (holding that government's failure to transfer an employee to a different position was not an adverse employment action because the position the employee was seeking involved a purely lateral transfer); *see also Burger*, 168 F.3d at 879 (denial of plaintiff's request for purely lateral transfer was not adverse employment action). Assuming

7

that the refusal to allow Pastrana to transfer to Department 910 is an adverse employment action, the evidence does not, as a matter of law, raise an inference as to a causal connection with protected activities or a disputed fact issue as to the proffered reason for the action.

The evidence shows that Pastrana did not engage in the walkout and was not fired in January 2000; he cannot assert retaliation on that basis.  There is a gap of approximately three years between Pastrana's EEOC complaint and lawsuit and his first transfer application, too long to support an inference of retaliation.  *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (stating that adverse action taken twenty months after an employee filed an EEOC charge demonstrated "no causality at all"); *Harper v. City of Jackson Municipal Sch. Dist.*, 149 Fed. Appx. 295, 303 (5th Cir. 2005) (holding that an employee's transfer more than eighteen months after an EEOC complaint did not support an inference of retaliation and suggested that "a retaliatory motive was highly unlikely").  The record also shows that some putative class members who, like Pastrana, filed an EEOC charge and joined in the lawsuit,  have successfully transferred to Department 910.  (Docket Entry No. 284, Ex. 9).

Defendants argue that when positions become available in a department, they give preference to applicants already in the department rather than to applicants with the plantwide seniority.  (Docket Entry No. 284 at 3).  Pastrana responds that this practice was not in place at the time of his March 2004 request.  (Docket Entry No. 264 at 8).  Dan Daniel, the former president of QuietFlex, testified at his July 30, 2003 deposition that the practice in awarding positions was to give preference to applicants already in the department with the

8

open position.  He testified as follows:

> A.  We were looking at whether the person that – the one I can remember reviewing – I can't remember what year, it was after 2000.  But the policy was that the people that got the first shot at the job came from within the department.  And I don't remember the specifics.  But there was some question about – a question about the seniority and the qualification skills with that job.  And I don't really remember even, which department it was.

. . . .

> Q.  And how did the transfer policy normally work at QuietFlex, or how did it when you were there?

> A.  The first priority was for people within that department.  So, if you had a posting in, let's say 911, on the first shift, for instance, the first people that would be considered for that job would be people within Department 911.  And that would be based on seniority, assuming that they were all qualified to do the job.

> Q.  Okay.

> A.  And then, after that, it was again seniority, assuming that they all had equal qualifications to do the job.

> Q.  And if they didn't have – by "equal qualifications," do you mean they all had the same general skill base; or do you mean one person did a job better than another?

> A.  I think our intent was skill base.  And because they were moving to, typically, new jobs, it wouldn't have been based – if it was coming from outside the department, they would not have had – not have done that job.  So, we wouldn't have a quantifiable number.  In other words, they wouldn't – we wouldn't have a number that they could make X widgets versus somebody who could ma[k]e Y widgets.  Where that would come into play is if you had a forklift driver, for instance, and one of them had 10 years' experience driving a forklift and one had one year's experience driving a forklift.  And that particular job required a fair amount of experience and skill.

> Q.  Uh-huh.

9

A.     Does that make sense?

Q.     I think so.

A.     Okay.

Q.     So, you're saying, if somebody had been with the company for 12 years but had only been a forklift driver for one year –

A.     Or for two months.  It doesn't take long to learn to drive a forklift.

Q.     So, if somebody had only been doing it for two months but somebody had been working for the company for two years but they had been a forklift driver for the company for all of those two years, then qualifications might trump seniority in that situation?

A.     That's correct.

(Docket Entry No. 284, Ex. 5 at 30–32).  The record shows that the practice of giving preference to employees within a department when filling positions for that department existed before Pastrana sought to transfer to Department 910 in March of 2004.  Pastrana fails to present summary judgment evidence that the defendants' proffered nonretaliatory reason for denying him the transfer—that defendants gave preference to employees already in Department 910—was pretextual.  Pastrana fails to present a disputed factual issue as to his retaliation claim.

## IV.    Conclusion

Defendants' motion for partial summary judgment as to Pastrana's retaliation claim

is granted.

Signed on March 31, 2006, at Houston, Texas.

_____

Lee H. Rosenthal

United States District Judge

11